UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01540-GPG

NICHOLAS J. AURELIO

Plaintiff,

vs.

HEATHER SOUTH,
JONATHAN M. JOYCE,
LYNETTE NEDERHOED,
HEATHER HOHNOLZ,
MARION ALLISON ROCKER,-TUOHY
LARA J. MULLIN and
CITY AND COUNTY OF DENVER COLORADO,

Defendants.

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

NOW COMES the Plaintiff, Nicholas J. Aurelio, by and through his attorney, Brice A Tondre, and for his first amended complaint against the Defendants named hereinafter states as follows:

**PARTIES**

1. The Plaintiff, Nicholas J. Aurelio, is presently incarcerated in the Bent County Correctional Facility.

1

2. Defendant Heather South ("South") is an individual citizen of the State of Colorado.

3. Defendant Jonathan M. Joyce ("Joyce") was at all relevant times employed by the City and County of Denver as a Detective on its police force.

4. Defendant Lynette Nederhoed ("Nederhoed") was at all relevant times employed by the City and County of Denver as a Detective on it police force.

5. Defendant Heather Hohnolz ("Hohnolz") was at all relevant times employed as an investigator by the office of the Denver District Attorney.

6. Defendant Allison Marion Rocker-Tuohy ("Rocker-Tuohy") was at all relevant times employed as an assistant district attorney by the office of the Denver District Attorney.

7. Defendant Lara J. Mullins ("Mullins") was at all relevant times employed as an assistant district attorney by the office of the Denver District Attorney.

8. Defendant City and County of Denver, acting by and through its policymakers with respect to conditions of confinement of detainees in the Van Cise-Simonet Detention Center, was responsible for preventing violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution while he was a detainee.

**EXHIBIT 1**

## JURISDICTION

9. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343 in that four of the claims for relief alleged are to redress the deprivations of Plaintiff's rights secured by the constitution of the United States by persons acting under color of state law and pursuant to 28 U.S.C. § 1367 in that one of the claims for relief is so related to the federal causes of action that it forms part of the same controversy under Article III of the United States Constitution.

## FACTS

10. Plaintiff and Defendant South began a romantic relationship in February, 2012. Soon they began living together in Plaintiff's apartment. Shortly thereafter they moved into a condominium owned by Plaintiff's mother. In July, 2012, they decided to have granite counter tops installed. Defendant South paid for the new countertops with her credit card. Defendant South expected to be reimbursed by Plaintiff. In January, 2013, the relationship between Plaintiff and Defendant South began to deteriorate due to a dispute over who was going to pay for the granite countertops.

11. In February, 2013, Defendant South embarked upon a plan to use false accusations of domestic violence to force Plaintiff to reimburse her for the granite countertops.

12. On February 19, 2013, Defendant South made a complaint against Plaintiff which resulted in him being charged with domestic violence in case number 13GS902215. Plaintiff was arrested on February 19, 2013. On February 20, 2013, a protection order was filed, bond was set and Plaintiff was released from custody.

13. On February 26, 2013, Defendant South made another complaint against Plaintiff which resulted in him being charged with domestic violence in case number 13GS903310. Plaintiff was arrested on February 26, 2013. On February 27, 2013, a protection order was filed, bond was set and Plaintiff was released from custody.

14. Plaintiff and Defendant South were separated from February 26, 2013, until March 16, 2013, when they reunited. Between March 16, 2013 and April 16, 2013, Defendant South informed Defendant Joyce and the prosecutor on the two February cases that there was no basis for the two cases, that Plaintiff should not have been arrested, that she just wanted to get the police involved to solve financial issues. She told them that Plaintiff's mother had agreed to reimburse her for the granite countertop and that she would no longer support the initial claims. At Defendant South's request the protection orders and cases arising out of her February 19 and 26, 2013 claims were dismissed.

15. The events set forth in paragraph 14 put the Denver Police Department and the Denver District Attorney's office on notice that Defendant South used law enforcement to force third parties to comply with her demands. For law enforcement personnel, this made her an untrustworthy informant and complainant. In other words she was not a reliable and credible source for seizure purposes.

16. Rather than arrest Defendant South for false reporting, Defendant Joyce, without basis, harbored a hunch that Plaintiff induced Defendant South to cause the dismissal of the two February, 2013 charges.

17. Infuriated by Defendant South's refusal to prosecute the February 19 and 26, 2013, cases, Defendant Joyce filed a case against Plaintiff on April 16, 2013, alleging that Plaintiff violated protection orders in favor of Defendant South on February 24, 2013. He prepared an incident report which merely copied prior reports and was without probable cause. The report purported to be based on alleged violations of protection orders which had been dismissed. Based on Defendant Joyce's false report, Plaintiff was again charged with domestic violence in case number 13GS914154. A warrant was issued on April 16, 2013, and Plaintiff was arrested on April 20, 2103. On April 21, 2013, bond was set and posted, a protection order was issued and Plaintiff was released from custody.

18. Case number 13GS914154 was dismissed by the prosecution on January 14, 2014, because there was no evidence to support the charges and the protection order was cancelled.

19. On July 18, 2013, based on new claims by Defendant South, Plaintiff was charged in case # 2013CR03458 with bribing a witness, tampering with a witness, stalking and violation of a protective order. Plaintiff was arrested, bond was set and posted and Plaintiff was released from custody.

20. On September 10, 2013, Plaintiff was arrested and, on September 17, 2013, was charged in case # 2013CR4662 with assault, kidnapping and sexual assault with a deadly weapon along with evidence tampering, menacing, stalking and violation of a protective order.

21. On October 16, 2013, Defendant South made a complaint to the Denver Police Department that she received an e-mail from Plaintiff who was in custody at the Van Cise Simonet Detention Center. She claimed the e-mail was sent by Plaintiff while utilizing the Westlaw computer. Plaintiff was charged with domestic violence for violation of a protective order in case number 13M 09739. This charge was investigated and filed by Defendant Nederhoed who had no evidence other than the statement of Defendant South that an e-mail had been sent to her from jail by Plaintiff. Defendant South was known to be an unreliable

claimant who repeatedly used the police to attack Plaintiff. The investigation, after filing the charge, conclusively demonstrated that the complaint by Defendant South was false and that Defendant Nederhoed never had probable cause to charge Plaintiff. This charge was based solely upon the improbable statement by an unreliable person who was known to make false charges against Plaintiff for financial gain. The records of the Denver Sheriff's Office showed that Plaintiff was not using the Westlaw service at the time Defendant South said she received the e-mail

22. The July and September cases were being prosecuted by assistant district attorneys Defendants Rocker-Tuohy and Mullin and were being investigated by Defendants Nederhoed and Hohnolz. These four Defendants conferred and agreed to attempt to persuade the Denver Sheriff's Office to terminate Plaintiff's telephone and Westlaw privileges ad place Plaintiff on a 23 hour lockdown. An agreement was reached between the Denver Sheriff's Office and the said four Defendants. The alleged use by Plaintiff of the Westlaw computer to contact the victim, Defendant South, was relied upon to convince the Sheriff's Office to impose the restrictions. The four Defendants knew there was no probable cause to believe the allegations.

23. On October 18, 2013, all of Plaintiff's telephone and Westlaw

privileges were terminated and he was placed on 23 hour lockdown. Prior to this Plaintiff was in general population, was free to call anyone he chose and had use of the Westlaw system. These privileges were critically important to his preparation of a defense to the two felony cases instituted in July and September, 2013.

24. On or before October 18, 2013, Defendants Rocker, Mullin and Hohnolz agreed upon a plan designed to impede Plaintiff's efforts to prepare a defense to the charges against him.

25. On October 18, 2013, Defendant Hohnolz, at the direction of Defendants Mulllin ad Rocker-Tuohy, communicated to the detention center personnel that the prosecution directed that Plaintiff be placed in solitary confinement 23 hour per day, that he be denied any telephone contact with his attorneys, his friends and his family and that he be denied use of the Westlaw computer and the law library. These restrictions adversely affected his preparation for trial and his ability to raise money to make his bond.

26. The detention center personnel acceded to the directive of the prosecutors. When Plaintiff complained about these atypical and significant restrictions, they were approved by detention center policymakers Wilson, Than, Romero and Jordan.

27. The foregoing atypical and significant restrictions were imposed without

8

any process and are a clear deprivation of Plaintiff's liberty interests.

28. Plaintiff filed kites with Sheriff Wilson, Chief Than, Major Romero and Sergeant Jordan who were policymakers with respect to the conditions of confinement in the Van Cise-Simonet Detention Center. Those kites put the Sheriff's Office on notice that the charges were without probable cause. A review of the records of use of the Westlaw service and detention center logs made them aware that the charges were without probable cause. The four policymakers' approval of the imposition of conditions of confinement which were atypical and which interfered with Plaintiff's ability to prepare a defense with respect to the charges against him in the July and September cases constitutes the decision to impose and/or the adoption of the restrictions as the policy of the City and County of Denver. *See, Bryson v. City of Oklahoma City Oklahoma*, 627 P.3d 784, 790 (Colo. 2010). The four policymakers either made the decision to impose the restrictions or ratified the decisions of others who imposed the restrictions, all of which were requested by Defendants Mullin, Rocker-Touhy, Nederhoed and Hohnolz.

29. The termination of the aforesaid privileges prevented Plaintiff from contacting his lawyers, doing legal research, contacting investigators and obtaining money to pay lawyers and investigators and make bond. Additionally, the 23hour

9

lockdown severely affected Plaintiff's mental condition.

30. On November 28, 2014, the case on which the restrictions were based was dismissed by the prosecution at the direction of Defendants Mullin and Rocker-Tuohy.

## FIRSTCLAIM FOR RELIEF

31. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 30 above.

32. At all times relevant to the claims asserted herein, Defendant South was acting under color of State law in that she jointly participated with Defendants Mullin, Rocker-Tuohy, Nederhoed and Hohnolz in connection with their joint effort to violate Plaintiff's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution by prosecuting him on the basis of false accusations of use of the Westlaw service by Plaintiff to contact her. Defendant South used the State actors to attack Plaintiff and they used her to carry out their unlawful purpose to restrict Plaintiff in his preparation of a defense in the July and September cases. There was clearly joint purpose and joint action. This makes Defendant a State actor under the principles set forth in *Wagenmann v. Adams*, 829 F.2d 196, 209-211 (1st Cir. 1987) which was cited with approval in *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453-1457(10th Cir.

1995)

33. Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to recover damages caused by the violation of his rights not to be arrested, prosecuted, deprived of the right to counsel and deprived of a liberty interest in violation of the Fourth, Fifth, Sixth and Fourteenth Amendment to the United States Constitution. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

34. As a direct and proximate result of the conduct of the Defendant South, Plaintiff has suffered economic and non-economic damages.

35. The conduct of the Defendant South was in reckless and callous indifference to Plaintiff's federally protected rights justifying the award of punitive damages.

## SECOND CLAIM FOR RELIEF

36. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 35 above.

37. At all times relevant to the claims asserted herein, Defendant Joyce was acting under color of state law.

38. Defendant Joyce's conduct alleged in paragraphs 14 through 18 above constitute a violation of Plaintiff's rights under the Fourth Amendment to the

United States Constitution. Any reasonably trained police officer knows that using false statements to cause a person to be arrested and prosecuted is a clearly established violation of the Fourth Amendment.

39. Pursuant to 42 U.S.C. §1983, Plaintiff is entitled to recover damages caused by the violation of his rights not to be arrested and prosecuted without probable cause in violation of the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

40. As a direct and proximate result of Defendant Joyce's false statements, case number 13GS914154 was initiated and prosecuted which caused Plaintiff to suffer economic and non-economic damages. The case was terminated in Plaintiff's favor.

41. The conduct of Defendant Joyce was in reckless and callous indifference to Plaintiff's federally protected rights justifying the award of punitive damages.

### THIRD CLAIM FOR RELIEF

42. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 above.

43. At all times relevant to the claims asserted against the Defendants

Mullin, Rocker-Tuohy, Nederhoed and Hohnolz herein, they were acting under color of State law.

44. Defendants Mullin, Rocker-Tuohy, Nederhoed and Hohnolz were engaged in the prosecution of Plaintiff in case numbers 2013CR03458 and 2013CR9662 when the Westlaw stalking case came to their attention. The police department files were replete with evidence of Defendant South's lack of reliability as a complaining witness against Plaintiff. This, coupled with the detention center's records which clearly showed that Plaintiff was not using the Westlaw service at the times Defendant South claimed to have received e-mails from Plaintiff, clearly indicated that there was no probable cause on which to base a case against Plaintiff.

45. Despite knowing that the case was without basis, Defendants Mullin, Rocker-Touhy, Nederhoed and Hohnolz utilized it as a basis to convince the Sheriff's Office to place Plaintiff in solitary confinement 23 hours per day and to deny him telephone contact with his attorneys, his friends and his family and to deny him use of the Westlaw service. These restrictions adversely affected his ability to prepare a defense and to raise money to make his bond, which the aforesaid Defendants knew would result.

46. Any reasonably trained detention officer, prosecutor or investigator

knew that the imposition of atypical and significant restrictions on a detainee without due process of law was a clearly established violation of the Fourteenth Amendment to the United States Constitution. Causing the imposition of conditions of confinement which violate the Fourteenth Amendment is not a prosecutorial function.

45. Pursuant to 42 U.S.C. §1983, Plaintiff is entitled to recover damages caused by the violation of his Fourteenth Amendment rights not to deprived of his liberty interests. Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

46. As a direct and proximate result of the conduct of Defendants Mullin, Rocker-Touhy, Nederhoed and Hohnolz Plaintiff has suffered economic and non-economic damages.

47. The conduct of said Defendants was in reckless and callous indifference to Plaintiff's federally protected rights justifying the award of punitive damages.

## FOURTH CLAIM FOR RELIEF

48. Plaintiff incorporates the allegations contained in paragraphs 1 through 47 above.

49. The city and county of Denver, acting by and through Sheriff Gary

Wilson, Chief Than, Sergeant Jordan and Major Romero, who were its policy makers with respect to conditions of confinement in the Van Cise Simonet Detention Center, approved, ratified and adopted as its policy the conditions imposed with respect to Plaintiff all as is more particularly detailed in paragraphs 25-29 above.. Therefore, the City and County of Denver is liable for the injury and damages suffered by Plaintiff as a result of his atypical conditions of confinement. Under these circumstances the City and County of Denver, Colorado, is liable for their conduct under 42 U.S.C. §1983 and §1988.

50. The unconstitutional conditions of confinement caused Plaintiff to suffer economic and non-economic damages.

### FIFTH CLAIM FOR RELIEF.

51. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50 above.

52. Defendant South caused Plaintiff to be arrested and prosecuted in case number13M09739 by making false reports with respect to receipt of an e-mail from Plaintiff via the Westlaw computer. The false report was malicious in that it was made in order to impede Plaintiff's preparation of a defense to the July and September cases. The case ended in Plaintiff's favor.

53. Defendant South's conduct constitutes malicious prosecution under

the law of the State of Colorado.

55. As a direct and proximate result of Defendant South's conduct Plaintiff suffered economic and non-economic damages.

56. Defendant South's conduct was fraudulent, malicious, willful and wanton, justifying the award of punitive damages.

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer herein and that upon trial of this matter Plaintiff be awarded judgment for the damages found by the trier of fact, both compensatory and punitive, that he be awarded his attorney's fees and costs incurred in prosecuting this action, pre and post judgment interest allowed by law and that he be granted such other and further relief as the Court deems appropriate in the circumstances.

**PLAINTIFF DEMANDS TRIAL TO A JURY GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES AND PRESERVED BY RULE 38 F.R.C.P.**

/s/ Brice A. Tondre

Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado 80226
Telephone: 303-296-3300
Facsimile: 303-238-5310
briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFF

17